139 A.2d 493 (1958)
William R. CAMPBELL, John C. Jonkus, Jr., Homer W. Booker, Jr., John W. Gibson, Rev. Newton C. Wilbur and Virginia O. Warren, Appellants, Plaintiffs Below,
v.
The COMMISSIONERS OF THE TOWN OF BETHANY BEACH, a body politic and corporate of the State of Delaware, and J. Gordon Smith, Benjamin Ableman, Thurman G. Adams, J. Draper Brown, Jr., Dallas D. Culver, Samuel J. Fox, Frank R. Grier, Edward Kelly, William P. Richardson, Hugh R. Sharp, Jr., Benjamin F. Shaw, II, and Robert D. Thompson, being and constituting the members of The State Highway Department of the State of Delaware, Appellees, Defendants Below.
Supreme Court of Delaware.
March 17, 1958.
*494 Robert B. Walls, Jr., Wilmington, for appellants.
Jackson W. Raysor, Georgetown, for appellees.
SOUTHERLAND, C. J., WOLCOTT, Justice, and STOREY, Judge, sitting.
WOLCOTT, Justice.
This is an appeal from the denial after final hearing by the Court of Chancery of Sussex County of an injunction to prevent the Commissioners of the Town of Bethany Beach and the members of the State Highway Department from constructing a new state highway through Bethany Beach.
The proposed highway through Bethany Beach is a part of State Route 14 extending southward from Dewey Beach to the Maryland State Line, and ultimately to Ocean City, Maryland, paralleling the Atlantic *495 Coast at a distance of several hundred feet to the westward.
Bethany Beach is primarily a summer resort lying on both sides of Route 14. It was incorporated as a municipality by 25 Laws, Ch. 212, approved March 26, 1909. It is situated on a strip of fast land between the Atlantic Ocean and inland waterways. It consists of three main streets running parallel with the coast. The center one of these streets, Pennsylvania Avenue, is the present route of State Highway 14 and, at present, is a two-lane two-way traffic road with a right-of-way of 60 feet.
The State Highway Department proposes to make Route 14 a dual highway, including that part of it which passes through Bethany Beach. The Highway Department proposes to relocate Highway 14 on Delaware Avenue in Bethany Beach. Delaware Avenue is the third street of the town from the ocean running parallel thereto. The proposal would convert Delaware Avenue into a dual highway with a 50-foot island separating the north and south lanes and with a total right-of-way of 150 feet.
The proposal requires the bridging of the so-called Loop Canal which extends from White's Creek into the corporate limits of Bethany Beach and terminates in a turning loop. The Loop Canal is used by privately-owned small boats. The proposed bridge across the Loop Canal will have a clearance at mean low water of 4 feet 1 inch.
The proposal to construct the new highway along Delaware Avenue was first submitted to the Commissioners of Bethany Beach by the State Highway Department by letter. Thereafter, a meeting between the Department and the Commissioners was held in the Highway Department offices on October 29, 1956, at which meeting the Department's preliminary plans, surveys and reports, and possible alternative routes were discussed.
On November 3, 1956, at a special meeting of the Commissioners held in Bethany Beach, it was unanimously agreed to consent to the proposal of the State Highway Department for the Delaware Avenue route. Thereafter, the State Highway Department published notices of a public meeting to be held in the area on December 14, 1956 to discuss the proposal. This meeting was called solely because of the requirements of the Federal Highway Aid Program, and in order to receive federal funds in aid of the project. A notice of the public meeting was received by the Commissioners of Bethany Beach. They, in turn, publicized it at their regular meeting of December 7, 1956.
On December 14, 1956, some of the residents of Bethany Beach who had learned of the proposed public meeting formed the West Bethany Beach Civic Association. These appellants are members of the Civic Association and were instrumental in its formation. The purpose of the Civic Association was to present opposition to the relocation of Route 14 on Delaware Avenue.
Following the public meeting, the Commissioners of Bethany Beach reproduced on a map the various routes for the relocation of Route 14 which had been suggested, and sent a copy to each taxpayer of Bethany Beach, and called a public meeting of the property owners of Bethany Beach for January 26, 1957. Thereafter, public meetings were held by the Commissioners on January 26, February 15, March 15 and April 19, 1957, at which the proposed road project was fully discussed by the Commissioners and persons present, and at which all persons present were given an opportunity to be heard.
On May 1, 1957, the Commissioners met with the members of the State Highway Department and went over the final engineering drawings of the Department. At a special meeting of the Commissioners, on May 3, 1957, the signing of an agreement giving consent to the State Highway Department to construct Route 14 along Delaware Avenue was authorized.
*496 The agreement of consent actually executed was signed by the officers of the Commissioners with improper designations of title. Thereafter, these appellants commenced this action in the Court of Chancery of Sussex County to restrain the proposed construction in which, inter alia, they attacked the agreement of consent on the technical ground of the improper designation of the municipal officers in the agreement. Thereupon, on advice of counsel, the Commissioners of Bethany Beach on August 30, 1957 authorized and caused to be executed a new agreement of consent with a proper designation of the executing officers.
The foregoing are the basic facts of the litigation. In our consideration of the questions raised by the appellants, we will have occasion to refer to other additional facts.
The appellants raise three points which it is urged require the reversal of the judgment below. These points follow:
1. The Commissioners of Bethany Beach acted in bad faith in consenting to the construction by the State Highway Department of a dual highway on Delaware Avenue through the Town of Bethany Beach.
2. §§ 24 and 25 of the Charter of the Town of Bethany Beach operate as a limitation upon the authority of the State Highway Department to condemn land in Bethany Beach for highway construction, and require the Commissioners of Bethany Beach, prior to consenting to the construction of a state highway through the corporate limits, to first acquire by the condemnation procedure provided for in said sections the land itself.
3. The State Highway Department may not bridge the Loop Canal in the proposed manner because such bridging would unnecessarily impede the navigation of said canal.
The first point is that the Commissioners of Bethany Beach acted in bad faith. On this point the Vice-Chancellor ruled that he found "absolutely no evidence of capriciousness or bad faith or fraud on the part of the State Highway Department or the Commissioners".
This court has recently held that it is improper for a court to inquire into the motives activating members of municipal governing bodies in determining whether or not action taken by such municipal officers is valid, when such officers are acting within the scope of their admitted powers, unless the complaining parties prove bad faith or fraud on the part of such municipal officers. Klaw v. Pau-Mar Construction Co., Del., 135 A.2d 123.
We observe that the Charter of the Town of Bethany Beach (25 Laws, Ch. 212) confers upon the Commissioners complete power to act for the municipality without the necessity of submitting questions to a referendum of the voters of the municipality. The action of consenting to the highway proposal thus falls within the scope of their powers. Unless, therefore, appellants can show bad faith, the motives which led the Commissioners to give their consent to the State Highway Department's proposal are immaterial.
The contentions of the appellants under this heading may be summarized as follows: The Commissioners failed to inform the property owners of Bethany Beach of the complete facts; the Commissioners ignored the original purpose of the founding of Bethany Beach as a religious settlement in that the proposed Delaware Avenue route bisects a large block owned by the founding church; the Commissioners held special meetings upon the subject and kept from the property owners the information they possessed on the proposal; the Commissioners gave their consent to the Delaware Avenue route which not only impedes navigation of the Loop Canal but costs approximately $100,000 more than the proposed alternative routes; the Commissioners gave their consent knowing that the opposition to the Delaware Avenue route was overwhelming; the Commissioners *497 consented to the Delaware Avenue route for the reason that such route would increase the value of the properties they owned as individuals between Delaware Avenue and the ocean.
The appellants contend that they have established these matters, but as we read the record the contrary is the fact. The record demonstrates in our opinion that the Commissioners concealed no facts from the objecting property owners. They afforded opportunity for full discussion. In fact, it is difficult to visualize what more in the way of keeping the property owners informed the Commissioners could have done.
It is true that the formal action of the Commission as a Board was done in executive session from which the public was excluded, but there is no requirement in the Charter of the Town of Bethany Beach that proposed action by the Commissioners within their admitted powers should be submitted to the vote of a public or town meeting, or acted upon in public.
With respect to the contention that the church property is destroyed, it appears that no one representing the church has appeared in objection to the proposal, and it is difficult to see how these appellants, having no interest in the church property, may be heard in its defense.
With respect to the charge that the Delaware Avenue route is the most expensive of all of the proposed routes, it clearly appears that the Commissioners relied upon a report made by a reputable consulting engineering firm. From this report it appears that the Delaware Avenue route is actually the least expensive of all of the proposed routes.
With respect to the charge that the Commissioners' consent was motivated by the desire for personal gain, the short answer to it is that most of the property comprising Bethany Beach lies to the east of Delaware Avenue and will, presumably, be benefited by any increase in value as a result of the new highway. It also is the fact that the Charter of Bethany Beach requires the Commissioners to be property owners. If the mere fact of possible enhancement of value of the properties owned by the Commissioners precludes their consent to this proposal, it is obvious that, as a practical matter, no Board of Commissioners could be obtained to validly consent to a new highway through the municipality since all Commissioners are required to be property owners.
We think the most that can be said for the contention of the appellants under the first point is that the facts show a difference of opinion between the Commissioners and the objecting property owners. Appellants' argument in reality is simply that they believe a different route would be more desirable. The Commissioners have a contrary view. While the record is not clear, it certainly does not justify the statement by the appellants that the opposition among Bethany Beach property owners to the Delaware Avenue route was overwhelming.
In this situation, we think the courts are powerless to interfere. When there is a dispute of opinion between contending factions in a municipality, the courts will enforce the considered judgment of the governing authorities. Lynch v. Town Council of Georgetown, 21 Del.Ch. 25, 180 A. 594.
With respect to the second question, the appellants make an argument based upon §§ 24 and 25 of the Charter of Bethany Beach. As we have pointed out, the governing of the affairs of Bethany Beach is reposed in the Commissioners. §§ 24 and 25 of the Charter, however, require the Commissioners whenever they propose "to locate and lay out any new street or reopen old streets" to follow a certain fixed method of condemnation, which requires a hearing to determine the necessity for the proposal.
A rather involved argument is made by appellants to make §§ 24 and 25 applicable *498 to the giving of consent by the Commissioners to the proposed construction of a state highway through the municipality, which, if accepted, would make the Charter sections limitations on the right of the State Highway Department to proceed with proposed highway constructions through the municipality when such construction involves the widening of existing right-of-ways.
However, 17 Del.C. § 134(a) provides that the State Highway Department shall have no jurisdiction over the streets of any municipality in the state "except as otherwise provided in this section". 17 Del.C. § 134(b) authorizes the Highway Department, whenever in its judgment it is considered desirable to do so, to construct and maintain a state highway through any municipality, provided that the Department may not change the width of any street in such municipality except with the consent of the duly constituted governing body of the city or town.
It seems obvious to us that 17 Del.C. § 134 gives the Highway Department the power to construct highways through municipalities with or without the consent of the municipal governing authorities, as long as the width of existing streets is not increased. Only when an increase in width is proposed, as is the case before us, is such consent required. That consent, when given, is not, as appellants seem to argue, a delegation of the Commissioners' power to lay out streets, but is merely consent on their part that the Highway Commission may exercise its own statutory power of condemnation (17 Del.C. § 132(c)) within the municipality. We think it clear, therefore, that §§ 24 and 25 of the Charter of Bethany Beach were intended to relate solely to action proposed to be taken by the Commissioners for the laying out of streets by the town, itself, and were not intended to cover the situation of the State Highway Department constructing a traffic artery through the municipality.
We think it clear that the Highway Department, in its sole discretion, may determine the necessity for and proceed to provide for state highways through municipalities and acquire the necessary land by condemnation. The only limitation on this power is the requirement that the consent of the governing body of the municipality be obtained prior to the acquisition of new land and the widening of streets. If this is not the proper construction of the statutes referred to, then we think the provisions of §§ 24 and 25 of the Charter of Bethany Beach, if they are to be construed as appellants contend they should be, are repugnant to the referred-to sections of the State Highway Department Act, 17 Del.C. § 101 et seq., and since the State Highway Department Act was enacted later in point of time, are overridden by the doctrine of implied repealer. Mayor and Council of Wilmington v. State ex rel. Du Pont, 5 Terry 332, 57 A.2d 70; Rickards v. State, 6 Terry 573, 77 A.2d 199.
Furthermore, in our opinion, §§ 24 and 25 of the Charter of the Town of Bethany Beach have been repealed by 10 Del.C. Ch. 61 which enacts a uniform act for the condemnation of land "by any authority whatsoever". The purpose of this statute is to unify the condemnation laws and to do away with special condemnation acts such as §§ 24 and 25 of the Charter of Bethany Beach which theretofore were all too common in our law.
With respect to the third point, the alleged impediment of navigation on the Loop Canal, it appears from the record that the Loop Canal was privately dug a number of years ago and is privately owned at the present time. It also appears that it has been used for years by the public.
We will assume that the public has some right of navigation in this canal. 17 Del.C. § 707 authorizes the State Highway Department, in constructing highways, to cross any canal "in such manner as not unnecessarily to impede the navigation" of it.
*499 The evidence demonstrates that the Loop Canal in recent years has become extremely shallow in places so that even small boats must be poled across the shallow places. The public use of the canal is now confined to its navigation by 14 or 15-foot outboard motor boats with a freeboard of 10 to 16 inches. The bridge clearance at mean low water will be 4 feet 1 inch and in the canal there is a 6-inch normal rise of tide.
We do not think these circumstances show an unnecessary impediment to navigation.
With respect to a suggestion made by appellants to the effect that the Loop Canal comes under Federal jurisdiction and, hence, may not be bridged by a state authority, we point out that the Federal Government has not intervened to assert its alleged rights; that the canal, itself, is located entirely within the confines of the State of Delaware; and that the canal does not connect interstate waterways but, in fact, enters into White Creek. The canal, itself, comes to a dead end in Bethany Beach.
Under the circumstances, we think there is nothing to justify injunctive process arising from the bridging of the Loop Canal.
For the foregoing reasons, we affirm the judgment of the Vice-Chancellor.