VERONICA B. PIEKARSKI, single woman, WALTER S. SOSIK, CAR-
MELLA M. SOSIK, EMORY L. BAUER and MARGERY HILL BAUER,
on behalf of themselves and others similarly situated,
                    Plaintiffs,

                         *vs.*

J. GORDON SMITH, BENJAMIN F. SHAW, II, BENJAMIN ABELMAN,
THURMAN G. ADAMS, J. DRAPER BROWN, DALLAS D. CULVER,
SAMUEL J. FOX, FRANK R. GRIER, EDWARD KELLY, WILLIAM
P. RICHARDSON, HUGH R. SHARP, JR., and ROBERT D. THOMP-
SON, constituting the State Highway Department of the State
of Delaware, and RICHARD A. HABER, Chief Engineer, and THE
MAYOR and COUNCIL of Wilmington, a municipal corporation of
the State of Delaware,
                    Defendants.

*New Castle—December 30, 1958.*

*Thomas Herlihy, Jr.,* and *Hiram W. Warder,* Wilmington, for plaintiffs.

*S. Samuel Arsht* and *Harvey Kronfeld,* Wilmington, for individual defendants constituting State Highway Department of State of Delaware and defendant, Richard A. Haber.

*Stewart Lynch,* City Solicitor, Wilmington, for defendant, The Mayor and Council of Wilmington, a municipal corporation.

MARVEL, Vice Chancellor: Plaintiffs, who own taxable real estate in the vicinity of Adams and Jackson Streets in the City of Wilmington, bring this class suit to enjoin the construction of a proposed freeway or limited access highway (designated as FA 1-2 by the Bureau of Roads of the United States Department of Commerce) to the extent that such highway as now designed proposes to bisect the City of Wilmington on a line running from the City's southern border across the tracks of the Pennsylvania Railroad, thence between Adams and Jackson Streets and finally across the Brandywine to city limits on the north.

This massive project, which according to its proponents, will, if built, not only provide a greatly needed new mode of access to and from the central business district of Wilmington but also furnish a vital link in a federally sponsored interstate defense road system contemplates the taking of all of the lands lying between Adams and Jackson Streets in Wilmington from the vicinity of Lancaster Avenue north to Delaware Avenue as well as such other lands within the boundaries of Wilmington as may be needed for the raising of viaducts across the Christiana and Brandywine Rivers and the building of approaches to such viaducts.

It is alleged in the complaint that unless the construction of this proposed freeway is enjoined, its installation will remove from the tax rolls property having an assessed value of close to $4,000,000, and that the project, if consummated, will entail the removal of more than six hundred dwellings, over eight business establishments, several churches and theatres, as well as parking lots, a play ground and park lands, all of which, unless enjoined, will adversely affect the life of the city.

Plaintiffs allege that the consent of Council of The Mayor and Council of Wilmington to the proposed project was obtained by false statements contained in a letter of the State Highway Department dated June 13, 1957, that public hearings on the project held pursuant to § 167(c) of Title 23 *U.S.C.* (Federal Aid Highway Act of 1956) [1] were not presided over by a member of the State Highway Department as allegedly required by such section, that purported Council approval of the plan in June, 1957 was later effectively rescinded by the Council which took office on July 1, 1957, that the route as finally approved was selected precipitately and without premeditation or a fair opportunity given to objectants to register their protests, that further action from the Council will be required for the perfecting of rights of way and the like over or through existing street patterns of Wilmington which action will not be forthcoming inasmuch as present Council has expressed its unwillingness to cooperate in "supplementing" the basic agreement entered into on June 28, 1957 between the then Mayor and Council and the Department, an agreement which plaintiffs contend is too indefinite to be enforced in its present form.

Finally, it is reiterated that the members of the State Highway Department obtained municipal consent to the Adams-Jackson Streets proposal "* * * by wrongful, reckless or fraudulent statements or misrepresentations * * *", that plaintiffs' rights under §§ 7, 9 and 16 of Article I of the Delaware Constitution, *Del.C.Ann.,* and the first and fourteenth amendments to the Constitution of the United States have been abridged by the Department's allegedly arbitrary and capricious action in undertaking a project which contemplates the taking of dedicated municipal park lands as well as homes and churches and the spending of public funds for the carrying out of an improper agreement, which, according to plaintiffs, is too indefinite to be enforceable in law or in equity.

The answer of the members of the State Highway Department denies any improper action on the part of the Department in the selection of route FA 1-2 as a freeway route, averring that its members and employees have in all respects acted in accordance with ap-

---

1. Now 23 *U.S.C.A.* § 128.

plicable laws, that the Department's communication of June 13, 1957 to The Mayor and Council clearly stated that a route to the west of the City would not be eligible for federal aid and consequently unacceptable to the State and that although such communication recommended the selection of a primary freeway route along Bancroft Parkway, nonetheless the differences between the original Route A (which merely contemplated a substantial widening of Adams Street) and the drastic requirements of the revised Adams-Jackson Streets plan were fully explained to Council at its public meetings of June 20 and June 27, 1957 meetings which were fully publicized in the local press and well attended. The Department further contends that hearings held pursuant to § 167(3) of Title 23 U.S.C. [1] were not only fairly conducted but complied with legal requirements, that plaintiffs and their attorneys availed themselves of opportunities to voice their protests against the possible taking of property along Adams Streets at public freeway hearings held in April and May, 1957, and that plaintiffs' attorneys were given a further opportunity to state their position at a June 24, 1957, meeting of the members of the Department held in Dover following Council's consent to the building of the project here attacked.

The answer goes on to state that the Department, while of the opinion prior to the Council meeting of June 20, 1957 that the Bancroft Parkway route offered the most readily acceptable through-city plan, the Department at such meeting described four possible routes through the City and that when Council by a vote of seven to five approved the Adam-Jackson Streets plan, such plan was thereupon formally adopted by the Department on June 24, 1957, in lieu of its previously sponsored Bancroft Parkway route despite the fact that the FA 1-2 line as ultimately chosen involves the contemplated spending of $16,000,000 more than the estimated cost of a freeway along the Bancroft Parkway line. The Department was and apparently is still firmly of the opinion that the benefits to be gained by the city from the construction of FA 1-2 through the Adams-Jackson Streets alignment warrant this added expenditure, ninety per centum of which total costs will be defrayed by federal funds.

1. Now 23 *U.S.C.A.* § 128.

The answer further alleges that on June 27, 1957, Council, despite the vigorous objections of plaintiffs' attorneys, approved by a vote of seven to six a proposed agreement between The Mayor and Council and the Department for the construction of route FA 1-2 at the earliest possible date, that on June 28, 1957, such agreement was executed, that the so-called rescinding resolution adopted by the incoming Council on July 25, 1957, was ineffective to cancel the previously granted consent, and that the selection of the FA 1-2 freeway route by Council and the approval of such choice by the Department and by the United States Bureau of Public Roads were the result of several years of careful study by competent engineers and not the by-product of capricious or willful actions.

In reply to plaintiffs' charges that FA 1-2 as now planned proposes illegally to take public park lands without the consent of the Park Commissioners, the answer alleges that the Wilmington Board of Park Commissioners (whose consent is required to the building of a county road or street over, under or through any park under its control, § 3, Chap. 204, Vol. 17, Laws of Delaware) is not opposed to the use of park property for the construction of FA 1-2 "* * * provided an adequate and acceptable quid pro quo in park land is received in return * * *."

In conclusion, the answer describes affirmative preliminary action, involving the expenditure of substantial sums of money, already taken by the Department to promote FA 1-2 as now designed, charges plaintiffs with laches in failing to bring their suit immediately upon formal adoption of a specific freeway plan in June 1957, and moves to dismiss for failure to join the City of Wilmington as a party and for summary judgment.

Following the filing of the Department's answer, plaintiffs moved for an order adding The Mayor and Council of Wilmington as a party defendant. Such party, however, has made no effort to be realigned as a party plaintiff or to oppose the Department's motion for summary judgment. Accordingly, this is the opinion of the Court after briefing and argument by counsel for the original parties of the De-

partment's motion for judgment, and there being, in my opinion, no genuine issue as to any material fact, summary judgment may, if warranted, be appropriately granted.

■ The Department first argues that the consent of an incorporated city to the construction of a State Road within its boundaries, while granted here, is required only when the construction of such a road involves a change in the widths of existing streets (§ 134(b) Title 17 *Del.C.*), that the plan for FA 1-2 makes no provision for changing the width of any existing city street and that accordingly the Department did not need the consent of the City of Wilmington as a prerequisite to the construction of FA 1-2.

The history of present § 134(b) of Title 17, *Del.C.*, however, discloses a legislative intent to preserve to municipalities their power, authority and jurisdiction over their respective street systems, including powers to condemn insofar as street projects are concerned. This right of condemnation is clearly reserved to the municipalities until surrendered to the Department for a specific road project. I am of the opinion that the consent of the duly constituted governing body of Wilmington required by § 134(b) is a prerequisite to the building of FA 1-2 regardless of whether or not such plan proposes to change the widths of existing streets. The critical fact is that FA 1-2 requires the taking over of substantial areas of land within the corporate limits of Wilmington in derogation of the City's prerogatives in the field of laying out municipal streets. As stated by the Court in *Campbell v. Commissioners of Bethany Beach, ante p.* 233, 139 *A.2d* 493, 498, in reference to § 134(b) of Title 17, *Del.C.*

"We think it clear that the Highway Department, in its sole discretion, may determine the necessity for and proceed to provide for state highways through municipalities and acquire the necessary land by condemnation. The only limitation on this power is the requirement that the consent of the governing body of the municipality be obtained prior to the acquisition of new land and the widening of streets."

To be sure in that case the Court was concerned solely with the widening of an existing street and stated "* * * Only when an increase in width is proposed, as is the case before us, is such consent required * * *" however, the Court added: "* * * That consent, when given, is not, as appellants seem to argue, a delegation of the Commissioners' power to lay out streets, but is merely consent on their part that the Highway Commission may exercise its own statutory power of condemnation (17 *Del.C.* § 132(c)) within the municipality. * * *" I do not read this opinion, as the Department does, as a holding that the Department may unilaterally and without municipal consent take municipal land under the statute for an entirely new street.

■■ Having decided that the consent of Council is a prerequisite to the building of FA 1-2, it follows from a reading of the affidavit of the majority of seven Council members who voted for the Adams-Jackson Streets line that they clearly understood the implications of such consent and there is nothing in any of the other affidavits before me which meet the requirements of Rule 56(e), *Del.C. Ann.,* [2] to indicate that bribery, deception or the like was employed by the Department for the purpose of obtaining such required municipal consent. Furthermore, it being well established that Courts may not inquire into the motives of members of a municipal governing body in enacting a formal legislative act such as an ordinance, *Klaw v. Pau-Mar Construction Company,* 11 *Terry* 487, 135 *A.2d* 123, a fortiori the motives behind the casting of the seven votes in favor of FA 1-2 will not be inquired into here inasmuch as the Council members by majority votes were clearly acting within their powers in granting such consent. Compare *Campbell v. Commissioners of Bethany Beach, supra.*

■ Such consent having been given and incorporated into a formal contract, such contract was not subject to rescission if lawful in all other respects inasmuch as "* * * A municipal corporation can no more repudiate with impunity a lawful contract than can a private person or corporation. 5 McQuillin, Municipal Corporations, § 19.39.

---

2. *Rule* 56(e) requiries affidavits filed under the rule to be made on personal knowledge.

* * *"  *Randolph v. Wilmington Housing Authority, ante p.* 202, 139 *A.2d* 476, 489.

■ Other questions are raised, however, as to the legality of the consent here under attack. Plaintiffs contend that the municipal consent granted in June, 1957 was not a legal consent not only because of the way the project was presented to and voted upon by Council but because § 175 of Title 17 *Del.C.* requires that all property rights acquired under the subchapter of Title 17 having to do with controlled access facilities and the like shall be in fee simple, and because § 173 of the same subchapter states that the construction of controlled-access facilities shall be subject to such municipal consent as may be provided by law. Plaintiffs point out that the City did not purport to convey a fee simple title to any property by its purported consent and formal contract, however, as I read the statutes applicable to a controlled access highway such as FA 1-2 the crucial element is the proper surrender of rights by a municipality and here that has been done as required by law. The details of the carrying out of such surrender and whether rights essential to the freeway are to be acquired by purchase or by condemnation, or otherwise, are matters to be determined and resolved by the Department when the occasion arises. Plaintiff's other arguments as to the nature of Council's consent are also without merit. The contract of June 28, 1957 is clearly not unenforceable on the grounds of indefiniteness, and there is no requirement that Council's consent to the entry of the Department into the building of a municipal road take the form of an ordinance. If in the future, specific rights are threatened as a result of FA 1-2's progress into the city, relief may be sought at the appropriate time against any claimed invasion of local public or private property rights by the Department.

■ ■ Plaintiffs further contend that the project here under attack requires the consent of the Park Commissioners insofar as it contemplates the taking of city park lands. I agree that the City may not contract to sell its park land without the consent of the Park Commissioners in the absence of a legislative mandate, *Anderson v. Mayor and Council of Wilmington, ante p.* 74, 137 *A.2d* 521, however, that case did not decide the question of the power of public

authorities having the necessary powers to condemn park land for another public purpose. There being no contract of sale affecting park lands before me, there is, in my opinion, nothing to enjoin on this score inasmuch as the Department has unrestricted powers of condemnation not only under § 132(c) (4) of Title 17, *Del.C.* but also under § 175 [3] of the same title.

Finally, plaintiffs contend that their constitutional rights have been infringed because public hearings conducted under the provisions of the Federal Aid Highway Act of 1956 were presided over by a private citizen rather than by an official of the Department. These hearings were required by the federal act for the purpose of giving interested citizens affected by the proposed federal aid project the opportunity to be heard for the purpose of determining the economic effect of such freeway's contemplated location. The Federal Aid Highway Act specifically requires any State Highway Department submitting a plan for a federal aid highway to certify that it has held public hearings or afforded the opportunity for such hearings, and has considered the economic effects of the location of the proposed project, and minutes of such hearings, if held, are required to be forwarded to the United States Commissioner of Public Roads. The intent of these requirements is to give to every interested citizen the opportunity to be heard on any such proposed project, as well as the opportunity for a State highway department more fully to inform the public of the supposed advantages of such project.

There is no doubt but that these requirements were complied with, and the fact that a private citizen presided at such hearings did not prevent federal approval of the project. In any event plaintiffs are not seeking relief against the expenditure of federal funds per se and insofar as relief is sought against the State Highway Department, plaintiffs, while dissatisfied with the Department's choice of a freeway route, can have no conceivable basis for objection based on alleged abuse by the Department of constitutional guaranties of due process, freedom of assembly and the like. The matter of public hear-

---

3. "For the purposes of this subchapter, the Department may acquire private or public property * * * by * * * condemnation * * *." § 175, *Title* 17, *Del.C.*

ings is a federal and not a State requirement, there being no State law which directs the State Highway Department to hold public hearings on any project to be built under its auspices; and I am satisfied that the Department has not acted arbitrarily or capriciously insofar as the selection and approval of FA 1-2 are concerned. In the words of the Court in *Campbell v. Commissioners of Bethany Beach, supra* [139, *A.2d* 497] : "Appellants' argument in reality is simply that they believe a different route would be more desirable."

There remain for consideration the defenses of laches and plaintiffs' alleged lack of standing to bring this action. The defense of laches has been defined to be a form of waiver, or if not strictly waiver, conduct of a type which equity will deem sufficient to bar the application of a remedy otherwise available. Here I have found plaintiffs without remedy for their grievance. Accordingly, laches as a defense will not be considered.

Similarly, as I have found the consent of Council to the building of FA 1-2 to have been validly granted, the defense as to plaintiffs' standing to sue to set aside a municipal contract becomes unimportant, as it was necessary to determine whether the city's contract was tainted with fraud or otherwise illegal before reaching such defense and I have sustained the contract.

[14] As to the Department's final contention that plaintiffs were under a procedural duty to make demand on the City of Wilmington for action on its part against the Department prior to bringing this suit, (52 American Jurisprudence, Taxpayers' Actions, §§ 26 and 35 and compare Rule 23(b) of this Court), I am satisfied that demand was in effect tardily made prior to argument of the Department's motion by the joining of the City as a party, and, as noted, the City did not elect to take over the action.

The motion of the members of the State Highway Department of the State of Delaware for summary judgment of dismissal is granted.

Order on notice.